UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re                                                                                  Chapter 11

New York Spot, Inc.,                                                       Case No.  12-48530


                                    Debtor.
----------------------------------------------------------x

## **NOTICE OF SETTLEMENT**

       PLEASE TAKE NOTICE, that the upon the annexed application ("Application"), the undersigned will present the attached proposed Order ("Order") pursuant to Bankruptcy Rule 2004 to the Honorable Carla E Craig for approval on February 27, 2013.

       PLEASE TAKE FURTHER NOTICE, that objections, if any, to the Application or form of the proposed Order must be served upon the undersigned and filed with the Clerk of the Bankruptcy Court, with a courtesy copy sent to Judge Craig's chambers, at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York 11201 so as to be served, filed and received no later than February 26, 2013.

       PLEASE TAKE FURTHER NOTICE, that if no objection is filed, the Application may be granted without a hearing.  If an objection is filed, a hearing will be held on March 6, 2013 at 3:00 p.m. before Judge Craig at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York 11201.


Dated: New York, New York
       February 12, 2013
                              BACKENROTH FRANKEL & KRINSKY, LLP


                          By:   <u>s/Mark Frankel</u>
                               489 Fifth Avenue
                               New York, New York 10017
                               (212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                                                                    Chapter 11

New York Spot, Inc.,                                                          Case No.  12-48530


                                    Debtor.
---------------------------------------------------------x

## ORDER PURSUANT TO BANKRUPTCY RULE 2004

Upon the application ("Application") of West 22nd LLC ("Movant") seeking entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and directing the examination of New York Spot, Inc. ("Debtor") Yehuda Nelkenbaum, NCC Capital, Landlord Services I LLC, N.C. Caller P.C., Bayis Neeman, Charles Neiss, and Aron Tessler (the "Respondents"), and for the production of the documents from those entities, as set forth on Exhibit A to the Application, and after due deliberation and sufficient cause appearing thereafter, it is hereby

**ORDERED**, that the application be, and it hereby is, granted; and, it is further

**ORDERED**, that the each of the Respondents be, and hereby is, directed to appear for an examination pursuant to Rule 2004 of the Bankruptcy Rules within thirty (30) days from the date of this Order, at a mutually agreed upon time at the office of Backenroth Frankel & Krinsky, LLC, 489 5th Avenue, New York, New York; and, it is further

**ORDERED**, that each examination shall continue from day to day until it is completed; and, it is further

**ORDERED**, that each of the Respondents be, and hereby is, directed to produce for examination and inspection at the offices of Backenroth Frankel & Krinsky, LLP, within (20) business days after service of this Order, all documents in its custody, possession or control as set forth on Exhibit A to the Application; and it is further

**ORDERED**, that service of a copy of this Order shall be made by overnight delivery upon each of the Respondents at the addresses set forth in the Debtor's Schedules, and such service shall be deemed adequate.

Dated: New York, New York
       February \_\_\_\_, 2013

 

_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                                                              Chapter 11

New York Spot, Inc.,                                                    Case No.  12-48530


                              Debtor.
---------------------------------------------------------x


# MOTION FOR RULE 2004 EXAMINATION

       West 22nd LLC ("Mortgagee"), as and for its application for an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure directing the examination of New York Spot, Inc. (the "Debtor") Yehuda Nelkenbaum, NCC Capital, Landlord Services I LLC, N.C. Caller P.C., Bayis Neeman, Charles Neiss, and Aron Tessler (the "Respondents") for the production of the documents set forth on Exhibit A hereto, respectfully represents and sets forth as follows:

## BACKGROUND

The Debtor and its Property

       1.     On December 18, 2012 ("Filing Date"), the Debtor filed a petition under Chapter 11 of the Bankruptcy Code.  The Debtor owns a four story single room occupancy hotel located at 442 West 22nd Street, New York, New York (the "Property") with 23 Class B apartments.

       2.     Given the secured debt encumbering the Property, an SRO hotel will not earn enough money to pay the bills.  Nor, due to gentrification, is an SRO hotel the "highest and

best" use for the Property.  Thus, Gregory Soumas, the Property receiver (the "Receiver"), like the Debtor before him, has been leaving apartments vacant as tenants leave, to preserve the value of the Property for redevelopment.

        3.      In the meantime, the rental income is barely sufficient to cover basic operating expenses, let alone major repairs, real estate tax, water and sewer charges.  The Property, therefore, needs to be subsidized.  At least for the past few years, Mr. Nelkenbaum has not subsidized the Debtor, (except to pay legal fees for litigation against the Mortgagee).   That led to (a) defaults under the Mortgage, (b) defaults in payment of real estate taxes (c) defaults in insurance payments, and (d) failure to make life safety repairs.  The Mortgagee, therefore, filed a foreclosure action.

The First Bankruptcy Case and the Subsequent Foreclosure Judgment

        4.      The Debtor filed its first bankruptcy petition on May 4, 2011.  The stay was lifted on August 10, 2011.  The petition was dismissed with prejudice for six months on October 19, 2011.

        5.      The dismissal followed (a) Nelkenbaum's failed Chapter 11 plan to reinstate the mortgage and (b) Nelkenbaum's failure to honor his commitment to amend the plan to sell the Property.

        6.      Following the dismissal with prejudice, Nelkenbaum raised half-hearted foreclosure defenses in the New York Supreme Court which only served to delay the process.

        7.      On November 5, 2012, the Supreme Court entered a foreclosure judgment ("Foreclosure Judgment").

8.     The amount due under the Foreclosure Judgment as of December 18, 2012, is $3,002,492. Outstanding real estate taxes total $99,066. Total secured debt totals $3,101,568.

9.     The foreclosure sale was scheduled for December 19, 2012, long after the six month 'with prejudice' period expired.

The Present Bankruptcy Case and it Fatally Flawed Chapter 11 Strategy

10.    On December 18, 2012, the night before the foreclosure sale, the Debtor filed the bare bones petition for this case.

11.    Thereafter, the Debtor filed Schedules. The Schedules indicate virtually the same debt that the original schedules disclosed. In most instances, the schedules indicate that the amount due is unknown. Furthermore, Mr. Nelkenbaum has filed any number of Chapter 11 petitions in the Bankruptcy Court, again with the same creditor list, and again with the debt generally indicated in an unknown amount.

12.    Many of Mr. Nelkenbaum's other cases have resulted in confirmed plans or in a disposition of the subject properties. Such transactions have not, however, affected the claims scheduled in subsequent cases.

13.    In this case, the local rule affidavit states, among other things, that the Debtor's Chapter 11 plan prospects are contingent upon wiping out default interest and unspecified "unreasonable charges" as a result of interest by "potential new investors," as follows:

> In recent weeks, the Debtor has been contacted by potential new investors to fund a plan of reorganization that would pay the mortgage holder all principal plus non-default interest, without default rate of 24% or other unreasonable charges. Accordingly, the Debtor has elected to re-file for Chapter 11 relief to prevent the

3

foreclosure sale, in the belief that a meaningful dialogue can be had with the lender, with the aid of new investors.

14. In the Debtor's objection to the Mortgagee's lift stay motion, however, the Debtor revealed that the "new" investor was Mr. Tessler. Mr. Tessler is hardly new. He is listed as a creditor in all of Mr. Nelkenbaum's cases including this case and its predecessor. Morevoover, Mr. Tessler apparently funded the plan in at least one of Mr. Nelkenbaum's other cases.

## RELIEF REQUESTED HEREIN

15. By this Application, the Mortgagee seeks an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"): (a) authorizing and directing the production of documents, and (b) authorizing and directing the depositions of the Respondents.

16. Rule 2004 provides "on motion of any party in interest, the court may order the examination of any entity" with regard to "acts, conduct or property or to the liabilities and financial condition of the debtor; or to any matter which may affect the administration of the Debtor's estate . . ."

17. The Mortgagee, therefore, seeks information as to the Debtor's liabilities and the relationships by and among Mr. Nelkenbaum's various entities such that the creditor list is almost the same in all of his cases.

18. Accordingly, the Mortgagee requests the entry of an order substantially in the form annexed hereto, authorizing the Mortgagee to conduct an examination and for the production of documents specified therein.

## **CONCLUSION**

WHEREFORE, the Mortgagee respectfully requests that the Court enter an order granting the relief requested herein, and that the Court grant such other relief as may be just and proper.

Dated:    New York, New York
         February 12, 2013

             **BACKENROTH FRANKEL & KRINSKY, LLP**
             Attorneys for the Mortgagee

       By:    s/Mark A. Frankel
          489 Fifth Avenue
          New York, New York 10017
          (212) 593-1100

**EXHIBIT A**
**SCHEDULE OF DOCUMENTS TO BE PRODUCED**

DEFINITIONS

A. "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York.

B. "Communication(s)" means and includes any transmission or exchange of information between two or more persons, whether orally or in writing, including, without limitation, any discussion or information carried on or transmitted by means of letter, note, memorandum, interoffice correspondence, telephone, telegraph, telex, telecopy, e-mail, cable, or some other electronic or other medium.

C. "Debtor" means New York Spot Inc.

D. "Document" or "documents" is used in the broadest sense, and includes all tangible things and recorded information, including the original or non-identical copy or draft.  Examples of documents include, but are not limited to, handwritten, typed or printed papers, handwritten notations, letters, cards, memoranda, invoices, purchase orders, diaries, electronic mail, financial statements, manuals, calendars, notes of telephone conversations, reports, receipts, correspondence, notes, ledger entries, accounting entries, computer print outs, tapes, billings, disks, time sheets, expenses, vouchers, cost statements, CD-ROM, and other forms of electronically or magnetically maintained information. The terms shall also include the file jackets, and labels thereon, in which responsive documents are maintained. Each request for production seeks the production of documents from any time period that meets the description set forth in that particular request for production.

D. "Landlord" means Landlord Services I LLC, its attorneys, agents, and representatives.

E. "Landlord Claims" means those certain claims against the Debtor's estate held by Landlord, as reflected on Schedule F to the Debtor's schedules of assets and liabilities.

F. "N.C. Caller" means N.C. Caller P.C., its attorneys, agents, and representatives.

G. "N.C. Caller Claims" means those certain claims against the Debtor's estate held by N.C. Caller, as reflected on Schedule F to the Debtor's schedules of assets and liabilities.

H. "NCC" means NCC Capital, its attorneys, agents, and representatives.

I. "NCC Claims" means those certain claims against the Debtor's estate held by NCC, as reflected on Schedule F to the Debtor's schedules of assets and liabilities.

J. "Neeman" means Bayis Neeman, its attorneys, agents, and representatives.

K. "Neeman Claims" means those certain claims against the Debtor's estate held by Neeman, as reflected on Schedule F to the Debtor's schedules of assets and liabilities.

L. "Neiss" means Charles Neiss, his attorneys, agents, and representatives.

M. "Neiss Claims" means those certain claims against the Debtor's estate held by Neis, as reflected on Schedule F to the Debtor's schedules of assets and liabilities.

1

N. "Person" or "persons" means and includes any natural person, corporation (private or governmental), limited liability company, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, and shall include your current or former employees and agents.

O. "Relating to" or "referred to" means concerning, evidencing, containing, recording, discussing, mentioning, reflecting, noting, summarizing, commenting upon, describing, digesting, reporting, listing, analyzing or studying the subject matter identified in the request for production.

P. "Relevant Period" means March 7, 2007 through and including the present.

Q. "Tessler" means Aron Tessler, his attorneys, agents, and representatives.

R. "Tessler Claims" means those certain claims against the Debtor's estate held by Tessler, as reflected on Schedule F to the Debtor's schedules of assets and liabilities.

S. "Senior Lender" means and includes West 22nd LLC, and each of their respective predecessors, successors, assigns, members, agents, representatives, and attorneys.

T. Terms such as "and", "or" and "and/or" each mean: (i) "and" individually; (ii) "or" individually; and (iii) "and" and "or" together.

INSTRUCTIONS

A. When making documents available, all documents that are physically attached to each other in files shall be made available in that form. Documents that are segregated or separated from other documents whether by inclusion in binders, files, subfiles or by use of dividers, tabs or any other method, shall be made available in that form. Documents shall be made available in the order and manner in which they are maintained.

B. If any portion of a document is responsive to a request, the entire document shall be produced. If documents that are produced in response to a request are normally kept in a file or other folder, then that file or folder, together with any labels attached thereto, shall be produced.

C. For each document withheld on the basis of any claim of privilege, the following information shall be produced: (i) the type of document; (ii) the identity of author(s) and addressee(s) of the document and any persons who received copies of the document; (iii) the general subject matter of the document; (iv) the date of the document; and (v) such other information as is sufficient to identify the document for compelling production or to enable the Court to make an camera determination of any claimed privilege or any objection asserted as a basis for withholding production.

D. Except when otherwise expressly stated, each itemized request calls for all documents described regardless of the time or date prepared, authored, generated, revised, sent, received or used.

E. If a request calls for a production of a document that has been destroyed, placed beyond Debtor's control, or otherwise disposed of, with respect to each such document the following shall be set forth: (i) the identity of author of the document; (ii) the identity of addressee, if any, and those persons, if any, who have seen or received a copy of the document or who are specified in a document to receive a copy thereof; (iii) the title of the document, if any, or other

identifying data; (iv) the type of document (e.g., letter, memorandum); and (v) a summary of its nature and subject matter.

DESIGNATION OF DOCUMENTS

The documents and communications to be produced in response to this request for production of documents are the following:

1. All communications between NCC and the Debtor and/or Yehuda Nelkenbaum;

2. All communications between Landlord Services I LLC and the Debtor and/or Yehuda Nelkenbaum;

3. All communications between N.C. Caller and the Debtor and/or Yehuda Nelkenbaum;

4. All communications between Neeman and the Debtor and/or Yehuda Nelkenbaum;

5. All communications between Neiss and the Debtor and/or Yehuda Nelkenbaum;

6. All communications between Tessler and the Debtor and/or Yehuda Nelkenbaum;

7. All documents relating to the terms of the loan arrangement or other obligation underlying the Landlord Services I LLC Claims including, without limitation, all term sheets, commitment letters, loan agreements, letter of credit facility agreements, promissory notes, security agreements, deposit account control agreements, consents, assignments, mortgages, guarantees, financing statements, or other agreements or instruments in connection therewith;

8. All documents relating to the terms of the loan arrangement underlying the NCC Claims including, without limitation, all term sheets, commitment letters, loan agreements, letter of credit facility agreements, promissory notes, security agreements, deposit account control agreements, consents, assignments, mortgages, guarantees, financing statements, or other agreements or instruments in connection therewith;

9. All documents relating to the terms of the loan arrangement or other obligation underlying the N.C. Caller Claims including, without limitation, all term sheets, commitment letters, loan agreements, letter of credit facility agreements, promissory notes, security agreements, deposit account control agreements, consents, assignments, mortgages, guarantees, financing statements, or other agreements or instruments in connection therewith;

10. All documents relating to the terms of the loan arrangement or other obligation underlying the Neeman Claims including, without limitation, all term sheets, commitment letters, loan agreements, letter of credit facility agreements, promissory notes, security agreements, deposit account control agreements, consents, assignments, mortgages, guarantees, financing statements, or other agreements or instruments in connection therewith;

11. All documents relating to the terms of the loan arrangement or other obligation underlying the Neiss Claims including, without limitation, all term sheets, commitment letters, loan agreements, letter of credit facility agreements, promissory notes, security agreements, deposit account control agreements, consents, assignments, mortgages, guarantees, financing statements, or other agreements or instruments in connection therewith;

12. All documents relating to the terms of the loan arrangement or other obligation underlying the Neiss Claims including, without limitation, all term sheets, commitment letters, loan agreements, letter of credit facility agreements, promissory notes, security agreements, deposit account control agreements, consents, assignments, mortgages, guarantees, financing statements, or other agreements or instruments in connection therewith;

13. All documents relating to the terms of the loan arrangement or other obligation underlying the Tessler Claims including, without limitation, all term sheets, commitment letters, loan agreements, letter of credit facility agreements, promissory notes, security agreements, deposit account control agreements, consents, assignments, mortgages, guarantees, financing statements, or other agreements or instruments in connection therewith;

14. All financial statements, loan agreements, guaranties, and other documents that identify the loans, guarantees, obligations, and other debts of the Debtor that arose on or after August 1, 2008.

15. All documents relating to the performance of the Debtor under the loan arrangement or other obligations underlying the Landlord Services I LLC Claims;

16. All documents relating to the performance of the Debtor under the loan arrangement underlying the NCC Claims;

17. All documents relating to the performance of the Debtor under the loan arrangement or other obligations underlying the N.C. Caller Claims;

18. All documents relating to the performance of the Debtor under the loan arrangement or other obligations underlying the Neeman Claims;

19. All documents relating to the performance of the Debtor under the loan arrangement or other obligations underlying the Niess Caller Claims;

20. All documents relating to the performance of the Debtor under the loan arrangement or other obligations underlying the Tessler Claims;

21. All documents and communications relating to all transfers of money or other assets from Landlord Services I LLC to or for the benefit of the Debtor during the Relevant Period;

22. All documents and communications relating to all transfers of money or other assets from NCC to or for the benefit of the Debtor during the Relevant Period; and

23. All documents and communications relating to all transfers of money or other assets from N.C. Caller to or for the benefit of the Debtor during the Relevant Period.

24. All documents and communications relating to all transfers of money or other assets from Neeman to or for the benefit of the Debtor during the Relevant Period;

25. All documents and communications relating to all transfers of money or other assets from Neiss to or for the benefit of the Debtor during the Relevant Period;

26. All documents and communications relating to all transfers of money or other assets from Tessler to or for the benefit of the Debtor during the Relevant Period;

27. All of the Debtor's Federal, State and local income tax returns, and worksheets used to prepare such returns, for the Relevant Period;

28. All of NCC's Federal, State and local income tax returns, and worksheets used to prepare such returns, for the Relevant Period;

29. All of Landlord Services' Federal, State and local income tax returns, and worksheets used to prepare such returns, for the Relevant Period;

30. All of N.C. Caller's Federal, State and local income tax returns, and worksheets used to prepare such returns, for the Relevant Period;

31. All of Neeman's Federal, State and local income tax returns, and worksheets used to prepare such returns, for the Relevant Period;

32. All of Neise's Federal, State and local income tax returns, and worksheets used to prepare such returns, for the Relevant Period; and

33. All of Tessler's Federal, State and local income tax returns, and worksheets used to prepare such returns, for the Relevant Period.

34. All documents relating to the income and expenses of all businesses owned or controlled by Yehuda Nelkenbaum, for the Relevant Period, including without limitation, all inventory records, all records of sales, all records of consignments, all records of purchases, all financial books and records, all general ledgers, all receipts, all agreements, workpapers, analyses, notes, and loan documents.

35. All documents relating to the value of the assets of all businesses owned or controlled by Yehuda Nelkenbaum.

36. All tax returns filed by all businesses owned or controlled by Yehuda Nelkenbaum for the Relevant Period.

37. All documents relating to the value of Yehuda Nelkenbaum's assets.

38. All tax returns filed by Yehuda Nelkenbaum for the Relevant Period.

39. Copies of any and all bank statements and documents pertaining to Yehuda Nelkenbaum fro the Relevant Period.

40. Copies of any and all judgments that have been entered against Yehuda Nelkenbaum.

41. Copies of any and all applications for credit Yehuda Nelkenbaum or any businesses he owns or controls has made during the Relevant Period.