UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                    Chapter 11

      New York Spot, Inc.                          Case no.  12-48530

                Debtor.
-----------------------------------------------------------x


# PLAN OF REORGANIZATION


Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
489 Fifth Avenue
New York, New York 10017
Telephone: (212) 593-1100
Fascimile: (212) 644-0544


ATTORNEYS FOR THE PROPONENT

## INTRODUCTION

West 22nd LLC ("Proponent"), proposes this Plan of Reorganization for New York Spot, Inc. (the "Debtor"). UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## Article 1

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.1    "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

1.2    "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

1.3    "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

1.4    "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files

2

an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Proponent's

schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or

contingent.

        1.5    "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an

Allowed Claim.

        1.6    "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent

it is an Allowed Claim.

        1.7    "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

        1.8    "Bankruptcy Code" shall mean Title 11 of the United States Code (11.

U.S.C. § 101 et. seq.

        1.9    "Bankruptcy Court" shall mean the Court as defined below.

        1.10    "Bar Date" shall mean _____ .

        1.11    "Cash" shall mean all cash and cash equivalents which evidence

immediately available funds in United States dollars.

        1.12    "Claim" shall mean a right to payment as set forth in § 101(5) of the

Bankruptcy Code.

        1.13    "Claimant" shall mean the holder of a Claim.

        1.14    "Confirmation Date" shall mean the date of the entry of the Confirmation

Order.

1.15    "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

1.16    "Confirmation Order" shall mean the order of the Court confirming the Plan.

1.17    "Court" shall mean the United States Bankruptcy Court for the EASTERN District of New York.

1.18    "Creditor" shall mean any entity that holds a Claim against the Debtor.

1.19    "Debtor" shall mean New York Spot Inc.

1.20    "Disputed Claim" shall mean the whole or any portion of any claim against a Proponent to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

1.21    "Effective Date" shall mean the Date upon which the Confirmation Order is a Final Order, or such other date after the Confirmation Date as may be practicable.

1.22    "Estate" shall mean the estate of the Proponent created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.23    "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

4

1.24    "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

1.25    "Interest" shall mean an existing ownership interest in the Debtor.

1.26    "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor.

1.27    "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

1.28    "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.29    "Mortgagee" shall mean West 22nd LLC.

1.30    "Petition Date" shall mean December 18, 2012.

1.31    "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

1.32    "Property" shall mean the Real Property located at 442 West 22nd Street, New York, New York.

1.33    "Proponent" shall mean West 22nd LLC.

1.34    "Purchaser" shall mean the purchaser of the Property pursuant to the Plan.

1.35    "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

1.36    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

1.37    "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against Debtor or the Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

1.38    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## Article 2

## CLAIMS CLASSIFICATION AND TREATMENT

## Class 1

2.1    **Classification** –  New York City real estate tax, water, sewer and other liens.

2.2    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment..

6

2.3     <u>**Voting --**</u>  Unimpaired and deemed to have accepted the Plan

<u>**Class 2**</u>

2.4     <u>**Classification**</u> – West 22nd LLC

2.5     <u>**Treatment --**</u> Payment of available cash up to Allowed Amount of Class 2 Claim, after payment of administration claims, Class 1 Claims and Class 3 Claims.  In the event that there is insufficient cash to make a $100,000 distribution to Class 4 Claims after payment of the Allowed Amount of the Class 2 Claim as provided for in the preceding sentence, the Class 2 Claimant shall cause up to $100,000 to be disbursed to fund the Class 4 Claim distributions as provided for in the Class 4 treatment section of the Plan.

2.6     <u>**Voting --**</u> Impaired and entitled to vote to accept or reject the Plan.

<u>**Class 3**</u>

2.7     <u>**Classification**</u> –  Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code.

2.8     <u>**Treatment**</u> – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

2.9     <u>**Voting**</u> --  Unimpaired and deemed to have accepted the Plan

<u>**Class 4**</u>

2.10    <u>**Classification --**</u> General Unsecured Claims

7

2.11    **Treatment --** Payment of available cash up to Allowed Amount of Class 4 Claims, after payment of administration claims, Class 1, 2, and 3 Claims.  In the event insufficient cash is available for Class 4 Claims after payment of senior claims as provided for in the preceding sentence, then each Holder of a General Unsecured Claim shall be paid its pro-rata share of a $100,000 distribution fund.  To the extent necessary, such fund will be funded by the Class 2 Claimant, as set forth in the Class 2 treatment section of the Plan.  The Proponent shall subordinate payment of its Class 4 claims to payment in full of all other Class 4 Claims.  The Proponent shall retain its right to vote as a class 4 Claimant.  The Proponent estimates a 100% recovery to creditors entitled to distribution from the $100,000 based upon currently existing legitimate scheduled and filed Claims, and the likelihood that the IRS claim is overstated.  To that extent that certain claims scheduled as "unliquidated" are allowed, distributions may be substantially diluted.

2.12    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 5

2.13    **Classification** --  Equity Interests

2.14    **Treatment --**  Payment of available cash up to Allowed Amount of Class 4 Claims, after payment of administration claims, Class 1, 2, 3 and 4 Claims.

2.15    **Voting --** Impaired and entitled to vote to accept or reject the Plan.

8

## Article 3

## ADMINISTRATION CLAIMS

3.1     Allowed Administrative Expenses shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Proponent shall be Paid in full or performed by the Proponent in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective Date.  United States Trustee fees will be paid, and operating reports will be filed as they come due by the Debtor.

## Article 4

## MEANS FOR IMPLEMENTATION

4.1     **Source of Funds** -- Effective Date payments under the Plan will be paid from the sale of the Property pursuant to the Sale and Auction Procedures annexed to the Plan as Exhibit A.  The transfer of the Property under the Plan shall be free and clear of all commercial leases not assumed under the Plan, as well as all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and to be disbursed under the Plan, provided, however, that the Mortgagee shall have the right, but not the obligation, to provide for

9

a split assignment of its mortgagee and an assumption by the purchaser in connection with the sale of the Property under the Plan.

4.2     **Release of Liens** – Except as otherwise provided for in the Plan and in connection with the assumption and assignment of the Mortgagee's mortgage, on the Effective Date, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Proponent any and all Collateral that secures or purportedly secures such Claim, as they pertain to the properties currently owned by the Debtor or such Lien shall automatically, and without further action by the Debtor or the Proponent, be deemed released, and (y) execute such documents and instruments as the Proponent requests to evidence such Claim holder's release of such property or Lien.

4.3     **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the

10

Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

4.4     **Execution of Documents** -- The Proponent shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

4.5     **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## PRESERVATION OF CLAIMS

4.6     All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code shall be preserved for the benefit

of the Debtor's estate, provided, however, that the Proponent shall have sole authority for prosecuting any such claims.

## Article 5

## DISTRIBUTIONS TO CREDITORS

5.1    The Proponent shall be disbursing agent under the Plan without a bond. The Proponent reserves its right to file objections to claims in the event grounds exist to object to particular claims, for a period of 120 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Proponent shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## Article 6

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    All non-residential unexpired leases and executory contracts not assumed prior to the Effective Date shall be rejected under the Plan.  All other leases shall be assumed under the Plan.  In the event of a rejection which results in damages a Proof of Claim for such

12

damages must be filed by the damaged party with the Court within sixty (60) days after the

Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract or

unexpired lease shall be treated as an Unsecured Claim.  Any Claim arising from the rejection of

any Executory Contract or unexpired lease not filed with the Court within the time period

provided in the preceding paragraph above shall be deemed discharged and shall not be entitled

to participate in any distribution under the Plan.

### Article 7

### RETENTION OF JURISDICTION

7.1     Retention of Jurisdiction.  The Court shall have jurisdiction over all

matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not

limited to, proceedings:

7.2     To consider any modification of the Plan under section 1127 of the

Bankruptcy Code;

7.3     To hear and determine all Claims, controversies, suits and disputes against

the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157;

7.4     To hear, determine and enforce all Claims  and causes of action which

may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right

of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the

Bankruptcy Code;

7.5     To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

7.6     To value assets of the Estate.

7.7     To enforce the Confirmation Order, the final decree, and all injunctions therein;

7.8     To enter an order concluding and terminating the Bankruptcy Case;

7.9     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

7.10    To determine all questions and disputes regarding title to the assets of the Debtor.

7.11    To re-examine Claims which may have been allowed for purposes of voting, and to determine objections which may be filed to any Claims.

## Article 8

## GENERAL PROVISIONS

8.1     Headings.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

8.2     Disputed Claims.  The Proponent shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid, nor shall

distributions be made to a creditor holding a Disputed Claim, until such Claim becomes an Allowed Claim.

8.3     Calculation of Time Periods.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

8.4     Other Actions.  Nothing contained herein shall prevent the Proponent, Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

8.5     Modification of Plan.  The Proponent may seek amendments or modifications to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Proponent may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## Article 9

## INJUNCTION AND PROPERTY OF THE ESTATE

9.1     Injunction.  The confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor or its property or properties, any obligation or debt except pursuant to the terms of the Plan.

15

## Article 10

## CLOSING THE CASE

10.1     Upon substantial consummation, the Debtor or the Proponent may move

for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

Dated: New York, New York
      April 4, 2013

                                West 22nd LLC
                                Plan Proponent

By:      s/ David Godbout, Managing Partner

                                BACKENROTH FRANKEL & KRINSKY, LLP
                                Attorneys for Proponent

By:      s/Mark A. Frankel
            489 Fifth Avenue
            New York, New York 10017
            (212) 593-1100

## EXHIBIT A to Plan

## BIDDING AND AUCTION PROCEDURES

These Terms and Conditions of Sale are promulgated in connection with the auction sale (the "Sale") of the real property located at 442 West 22nd Street (the "Property").

Time and Place of Sale: The Sale will be held on _____, 2013 at ____ __ m. at the offices of Backenroth Frankel & Krinsky, LLP, 489 Fifth Avenue New York, New York 10017.

Sale Pursuant to Chapter 11 Plan: The Seller of the Property is New York Spot, Inc. (the "Debtor"). The sale shall be conducted pursuant to Bankruptcy Code section 363 and the Chapter 11 Plan of Reorganization (the "Plan") proposed by West 22nd LLC, the Plan proponent ("Proponent").

Sale free and Clear of Liens: The Sale of the Property shall be conducted pursuant to the Proponent's Plan of Reorganization free and clear of liens, claims, commercial leases not assumed under the Plan, and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and disbursed under the Plan.

Qualification to Bid: In order to be qualified to bid on the Property, within seven days prior to the commencement of the Sale, each prospective bidder (except the Proponent's nominee) must deliver to the Proponent (a) a bank check in the amount of _____ ($_____) (the "Qualifying Deposit") payable to "Backenroth Frankel & Krinsky, LLC, as Attorneys" (b) evidence reasonably demonstrating such bidder's ability to consummate a sale on the terms proposed, and (c) a written offer to purchase substantially in the form annexed hereto. No later than one business day before the Sale, each bidder will be notified by the Proponent as to whether the Proponent deems such bidder qualified to bid at the Sale.

Bidding: Bidding shall be conducted openly at the Sale. The opening bid shall be $_____. Minimum bidding increments shall be $25,000. Proponent may credit bid its full claim.

Successful Bidder Additional Deposit: At the Sale, once a bidder is determined to have made the highest or best bid for the Property at the sale (the "Successful Bidder"), bidding shall be deemed closed and no additional bids will be considered. Within one business day after the Successful Bidder is determined, the Successful Bidder (except for the Proponent's nominee) shall be required to increase the Qualifying Deposit to an amount equal to ten percent of the winning bid, which amount shall serve as a good faith deposit against payment of the purchase price. At the conclusion of the Sale, the Proponent's counsel will return the Qualifying Deposits to all other bidders.

Hearing if Disputed Sale: In the event that an issue exists as to which competing bid is higher or better, a hearing will be conducted by the Bankruptcy Court on that issue at the Plan

Confirmation Hearing on the ___ day of April, 2013 at _____, at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York  11201.

<u>Sale Approval Order</u>:  the Confirmation Order confirming the Proponent's Plan shall approve the Sale, and in connection therewith, the Confirmation Order shall contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the sale and the purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

<u>Closing</u>:  The Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Qualifying Deposit) to the Proponent, by bank check, or wire transfer at the closing of title to the Property (the "Closing"). The Successful Bidder must close title to the Property at a date that is no more than fifteen (15) days after the Order by the Bankruptcy Court approving the Sale becomes final and non-appealable, TIME BEING OF THE ESSENCE as to the Successful Bidder, although such date may be extended solely by the Proponent.

<u>Transfer Tax</u>:  Under the Plan, pursuant to section 1146(c) Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

2

<u>Damages for Failure to Close</u>:  Time is of the Essence as Against the Successful Bidder and the failure of the Successful Bidder to either timely pay the additional Qualifying Deposit or timely close for any reason whatsoever (except as otherwise provided below) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Proponent retaining the deposit as liquidated damages and the termination of the Successful Bidder's right to acquire the Property under these Terms and Conditions of Sale.  The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the Debtor's inability to deliver a quit claim deed to the Property.  Expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Proponent or the Proponent's professionals be responsible for, or pay, such expenses.

<u>Backup Bidder</u>:  In the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these terms and conditions of sale, the Proponent, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Proponent deems appropriate.  Should the Second Highest Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Proponent to the Second Highest Bidder, the Proponent shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice.  All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in the  paragraphs above, except that the Second Highest Bidder must close within thirty (30) days of notification that his bid is accepted.  TIME IS OF THE ESSENCE.

<u>No Representations</u>:  the Proponent, the Proponent's professional, the Debtor, and the Debtor's professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or

equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rule or regulations issued by any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property.  Each bidder shall be deemed to have agreed and acknowledged that no such representations have been made.  the Proponent is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Proponent or Debtor or any real estate broker agent, employee, servant or other person or professional representing or purporting to represent the Proponent or Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Proponent.  For the avoidance of doubt, neither the Debtor nor the Debtor's professionals are authorized to provide any such warranties, guaranties, promises, statements, representations or information.

As Is Sale: The Property is being sold free and clear of all liens claims commercial leases not assumed under the Plan and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale.  Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions.  By delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid.  Neither the Proponent nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property.  All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Debtor, Proponent or their professionals.

Deed:  the Debtor, or the Proponent acting on the Debtor's behalf, shall convey the Property by delivery of a quit claim deed.

Broker:  Neither the Debtor nor the Proponent nor their professionals are liable or responsible for the payment of fees of any broker.

<u>Conduct of Sale</u>: these Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property.  By making a bid for the Property, all bidders will be required to acknowledge these Terms and Conditions of Sale and agree to be bound by them.

<u>Failure to Close</u>:  If the Debtor, or the Proponent on the Debtor's behalf, is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to confirm the Proponent's Chapter 11 plan or approve the sale of the Property pursuant to Section 363 of the Bankruptcy Code, the Proponent's only obligation will be to refund the Deposit, together with interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Proponent, the Debtor or their professionals.

<u>Right to Withdraw Sale</u>:  the Proponent reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as the Proponent deems necessary or appropriate.

<u>Plan Confirmation</u>:  The Sale of the Property is subject to confirmation of the Proponents' Plan and approval by the Bankruptcy Court.

<u>Breakup Fee</u>: None

<u>Proponent's Designee</u>:  Notwithstanding anything to the contrary herein, the Proponent shall be entitled to name a designee or designees who shall be deemed qualified to bid without posting a Qualifying Deposit or complying with the other requirements otherwise necessary to bid, and, if the successful bidder and Purchaser, shall be entitled to purchase the Property subject to some or all of the Proponent's mortgage.

<u>Bankruptcy Court Jurisdiction</u>:  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtors' pending case.

5

CONTRACT dated as of the \_\_\_\_ day of _____, 2013, between New York Spot, Inc., (the "Seller" or "Debtor") and _____ having an address at _____ _____ ("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## 1. Sale of Premises

Paragraph 1.01. Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, at the price and upon the terms and conditions set forth in this contract: the real property located at 442 West 22nd Street (the "Premises").

Paragraph 1.02.   Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Eastern District of New York (hereinafter the "Bankruptcy Court") in Case No. 12-48530, entitled "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which was approved by the Bankruptcy Court on _____ and is annexed to this contract.

Paragraph 1.03. Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (3) the Bidding and Auction Procedures approved pursuant to the motion of West 22nd LLC (the "Plan Proponent" or Mortgagee").

## 2. Purchase Price, Acceptable Funds

Paragraph 2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises is (                ) Dollars or such other bid by the Purchaser approved by the Bankruptcy Court, payable as follows:

(A) on the signing of this contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof  (the "Down Payment").
(B) THIS CONTRACT IS NOT SUBJECT TO ANY MORTGAGE CONTINGENCY.
(C) The balance at Closing (as hereinafter defined) in accordance with Section 2.02 hereof  (the "Cash Balance")

Paragraph 2.02. All monies payable under this contract, unless otherwise specified herein, shall be paid by (a) certified checks of Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the City of New York or (b) official bank checks drawn by any such banking institution, payable to the order of Seller (as Seller shall direct) and bearing no endorsements, except that Attorney's Escrow Checks of Purchaser payable to the order of Seller (or as Seller directs) up to the amount of $1,000.00 shall

be acceptable for sums other than the Purchase Price payable to Seller at Closing or (c) by wire transmission.

3. Escrow of Down Payment

Paragraph 3.01. (a) The Down Payment shall be paid by check or checks drawn to the order of and delivered to Backenroth Frankel & Krinsky LLP ("Escrowee"). The Escrowee shall hold the Down Payment in escrow in a non-interest bearing IOLA Account until the Closing or sooner termination of this Contract and shall pay over or apply the Down Payment in accordance with the terms of this section. At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding Procedures. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this Contractor an order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the Court of the Supreme Court, New York County. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contractor involving gross negligence on the part of the Escrowee.

(c) Escrowee or any member of its firm shall be permitted to act as counsel for West 22nd LLC (the "Proponent" or the "Mortgagee") in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d) Escrowee acknowledges receipt of the Down Payment by certified, bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

2

4. The Closing

Paragraph 4.01. The conveyance of title to the Premises by the Seller to Purchaser, and payment of the Balance by Purchaser to the Seller or as Seller directs shall take place 15 days following the entry of an Order approving the transaction (the "Closing"), whichever is later. Said Closing is to be held at the office of the Escrowee.

5.  Acknowledgments of Purchaser

Purchaser acknowledges that:

Paragraph 5.01. Purchaser has inspected the Premises, made all appropriate inquiries into the previous ownership and uses of the Premises, is fully familiar with the physical condition and state of repair thereof, and shall accept the Premises "as is" and in their present condition, including the environmental conditions as reflected in the Terms of Sale annexed hereto, without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this contract.  The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

Paragraph 5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the physical condition and state of repair thereof including the environmental conditions. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

Paragraph 5.03. In the event of any default by the Purchaser in the terms of this agreement, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the sum of money deposited upon the signing of this Contract as the Down Payment this day as hereinabove set forth, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

6.  Destruction, Damage or Condemnation

Paragraph 6.01. The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this contract.

7.  Seller's Closing Obligations

3

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

Paragraph 7.01. A quit claim deed, executed by the Debtor, or the Proponent on the Debtor's behalf, in proper form for recording so as to convey to Purchaser the fee title to the Premises, including recorded encumbrances as required by this Contract.

Paragraph 7.02. All required real property gains tax forms, questionnaires, and affidavits and New York State transfer tax returns executed by the Debtor, or the Proponent on the Debtor's behalf, to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

Paragraph 7.03. The right to possession of the Premises in condition required by this contract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deed subject to any Order of the Bankruptcy Court and the Bidding Procedures.  Seller shall not be obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Premises, or to remove any tenant or occupant therefrom after delivery of the Deed.

Paragraph 7.04. Any other documents required by this Contract or by law to be delivered by Seller to consummate this transaction.

8.  Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

Paragraph 8.01.  To the Mortgagee monies as defined above in payment of the Cash Balance.

Paragraph 8.02.  All required real property gains tax forms, questionnaires, and affidavits, and New York State transfer tax returns, and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the closing.  Purchaser will pay all applicable transfer taxes and recording fees.

Paragraph 8.03.  Any other documents required by this Contract or by law or reasonably required by seller to be executed and/or delivered by Purchaser to consummate this transaction.

9.  Apportionments

Paragraph 9.01. The parties specifically acknowledge that there shall be no apportionments made as of the date of closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

10.  Objections to Sale

Paragraph 10.01. This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Premises to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures.  Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to have conveyed, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller or (ii) to terminate this contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability.  Seller and Mortgagee shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, except as may otherwise be provided in this Contract.

Paragraph 10.02. Purchaser shall take title to the subject Premises "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the Village, Town, County, State, or other district in which said Premises lie.  Purchaser is aware of and agrees to the Terms of Sale which are attached to this Contract and required hereunder.

11.  Notices

Paragraph 11.01. All notices under this Contract shall be in writing and shall be delivered personally, by nationally recognized overnight courier, addressed to Mortgage's Attorney, on behalf of the Seller, at the address set forth below, and to Purchaser addressed to Purchaser's Attorney at the address set forth below.

Mortgagee's attorneys, Backenroth, Frankel & Krinsky, LLP, 489 Fifth Avenue, New York, NewYork 100l7

Purchaser's Attorney:

12.  Limitations on Survival of Representations, Warranties, Covenants and other Obligations

Paragraph 12.01. Except as otherwise expressly set forth in this contract, no representations, warranties, covenants or other obligations of Seller or Plan Proponent and/or Purchaser set forth herein shall survive the Closing except as specifically provided to survive,

5

and no action based thereon shall be commenced after the Closing except as to such representations specifically provided to survive.

Paragraph 12.02. The delivery of the deed by the Seller and the acceptance thereof by Purchaser shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly stated in this Contract to survive.

13.  Assignment of Contract

Paragraph 13.01.  Purchaser shall not assign this Contract or its rights hereunder without the prior written consent of the Proponent, and any purported assignment without such consent shall be void.  Nevertheless, an assignment of Purchaser's rights under this contract, if and when consented to, shall not be effective unless and until an executed counterpart of the instrument of assignment and of an assumption agreement by the assignee shall have been delivered to Proponent and Purchaser and such assignee shall have complied in a timely manner with the requirements of Art. 31-B of the New York Tax Law (the "Gains Tax Laws) applicable to the assignment transaction.

Paragraph 13.02.  Seller shall assign pending tax certiorari actions, if any, to Purchaser without any representations or warranties, and without any further obligation of Seller, except to execute such documents as may be necessary to effectuate such assignment.

14.  Miscellaneous Provisions

Paragraph 14.01 THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN THIS CONTRACT WILL NOT BE DEEMED TO AMEND OR ALTER SAID PROCEDURES OR ORDERS.

Paragraph 14.02. Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

Paragraph 14.03.  This Contract shall be governed by, and construed in accordance with, the Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Code or any Order of the Bankruptcy Court or the Bidding Procedures, the laws of the State of New York.

Paragraph 14.04. The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contractor any of the provisions hereof.

6

Paragraph 14.05. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

Paragraph 14.06. This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to 2.0l(A) hereto.

Paragraph 14.07. As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

Paragraph 14.08. Subject to Paragraph 14.01, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail.

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the date first above written.

Seller:

By:

Purchaser:

By:

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re                                                          Chapter 11

New York Spot, Inc.,                                           Case No. 12-48530

                     Debtor.
-------------------------------------------------------------x

## NOTICE OF SALE

       PLEASE TAKE NOTICE, that upon the application of West 22nd LLC
("Proponent") in the case of West 22nd LLC ("Debtor"), the real property located at 442 West
22nd Street shall be sold to the highest bidder at an auction sale to be conducted on
_____, 2013 at _____ at the offices of Backenroth Frankel & Krinsky, LLP,
489 Fifth Avenue, New York, New York 10017.  The Property shall be sold "as is."  Bidding
shall be limited to all cash offers, and the minimum opening bid shall be $_____,
and bidding shall be increments of $25,000.  All prospective bidders except Proponent or its
designee shall be required to deposit $_____ (the "Deposit") in escrow with the
undersigned counsel by bank check or wire deposit on or before _____, 2013 at 5:00 p.m.
Subject to the approval of the Bankruptcy Court at a hearing ("Hearing") to be held on
_____ at _____ __.m., or as soon thereafter as counsel can be heard, before
the Honorable Carla E. Craig, the highest bidder shall be the purchaser (the "Purchaser") of the
Property, free and clear of all liens, claims commercial leases not assumed under the Plan and
encumbrances, with any such liens, claims and encumbrances to attach to the proceeds of sale.
The Deposit shall be non-refundable. In the event the Purchaser closes on or before forty-five
days after the entry of an order approving the sale, the Deposit shall be applied to the purchase
price.  In the event Purchaser fails to close on or before fifteen days after the entry of an order
approving the sale, the Deposit shall be remitted to the Proponent.  Time shall be of the essence
in the closing of this transaction.  In the event Purchaser fails to close as set forth herein, then the
Proponent shall have the right to accept the bid next highest in amount to the original Purchaser's
bid.

       PLEASE TAKE FURTHER NOTICE, that a complete copy of the terms and
conditions of sale is attached to the Proponent's Chapter 11 plan filed in the Bankruptcy Court
and is available upon request of the undersigned.

Dated: New York, New York
      _____, 2013

                             Backenroth Frankel & Krinsky, LLP
                             489 Fifth Avenue
                             New York, New York  10017